James McGRAW, Appellee,

v.

BILL HODGES TRUCK COMPANY, INC., Appellant.

No. 53385.

Court of Appeals of Oklahoma, Division No. 2.

March 17, 1981.

Rehearing Denied April 8, 1981.

Certiorari Denied May 18, 1981.

Released for Publication by Order of Court of Appeal May 21, 1981.

Ronald L. Walker, George D. Davis, McKinney, Stringer & Webster, Oklahoma City, for appellee.

Tom M. Cummings, Grove & Grove, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

The pivotal question here is whether an employee possesses an enforceable claim to a bonus for a specified amount which is "given" for efforts put forth during a period ending three months earlier but because of a lack of current funds is not to be paid until the following year, save for hardship situations? We hold he does and affirm.

## I

For over 10 years James McGraw had been a valuable and trusted employee of Bill Hodges Trucking Company and, consequently, each year since 1968 he had been given a bonus.

On September 24, 1974, Hodges president, Jack Hodges, wrote McGraw a "Dear Jim" letter advising that "I am giving you a bonus for the work period between June 30, 1973, to June 30, 1974, which is our fisical [sic] year of $7,000.... This bonus will not be apid [sic] til [sic] next year, ... [but] will be reflected in your earnings and [you] will be able to participate in the Profit Sharing Plan with this amount."[1]

The following December, not long before Christmas, a dispute arose between Jack Hodges and McGraw over whether the latter had been working on his truck on company time. Hodges charged McGraw had and said he fired him. The employee, however, denied the allegation and insisted that he quit because of the attack. Hodges later refused to pay the promised bonus precipitating this lawsuit.

1. The full text of the letter reads:
"Dear Jim
"This letter is to advise you that I am giving you a bonus for the work period between June 30, 1973, to June 30, 1974, which is our fisical [sic] year of $7,000.00 This amount is determined by me, and me alone.
"The reason I am able to give this bonus is, the company has made money in this fisical [sic] period. The big reason was the sale I had at Woodward. The last six months of the fisical [sic] period we lost $170,000.00, so you can see there was a tremendous amount made in the sale transaction. We are still loosing [sic] money because there is more overhead and not enough trucks in the field. We hope to have this solved within the next 60 days.
"With the rising costs, it is very difficult for this company or any other to show profit; therfore [sic], I'm asking you to do your utmost and I know you will, to cut cost and raise production in this company. Interest rates today are completely unreasonable, I am paying 15% interest on almost all the money I borrow. My cash flow is way down, so it has put a burden on the company. "This bonus will not be apid [sic] til [sic] next year, because to be frank I do not have the money, and will not until we start making it. I will say this if there is a desperate need for you to receive your bonus you can personally contact me and I will see what I can do to help you.
"If everybody buckles down and pulls together these bonuses will continue to be given, but only if the company makes money. This bonus will be reflected in your earnings and will be able to participate in the Profit Sharing Plan with this amount.
"The method I will use to pay these bonuses will be by putting all the names in a hat and drawing, whoever is first is paid first and on down the line. This is the only fair way I know because I cannot pay them all at one time.
"I sincerely hope that come next June, I will be able to give another bonus, but believe me we are going to have to buckle down a lot tighter than we have been.
"Now that you have read this letter, go back and read it again. I am being very firm and frank about the whole matter. If there are any questions contact me personally.
"Sincerely,
"s/Jack
"Jack Hodges"

Plaintiff's pleaded theory was that the bonus was an obligation created in writing for previous work performance. Defendant, of course, denied this and answered that the "bonus alluded to was a gratuity from the employer and did not constitute any part or portion of plaintiff's employment agreement."

The dispute was tried to a jury which were instructed to determine whether the subject bonus was a part of plaintiff's employment contract or merely a gratuity. By their verdict the jury found the former to be the fact and awarded plaintiff a verdict for $7,000. Judgment was entered on the verdict. Defendant appeals contending in its petition in error that the court reversibly erred in: (1) overruling its motion for a directed verdict; and (2) entering the judgment for $7,000 against it.

## II

In support of its general contention the company argues that: (1) its president's September letter is not an enforceable contract for a bonus; (2) the promise to pay the bonus is unenforceable for vagueness and for lack of consideration; (3) the bonus is no part of the original contract of employment; (4) a contract for a bonus does not otherwise exist for want of obligatory mutuality between McGraw and his employer; and (5) McGraw was not employed at the time the bonus was to be paid.

Highlighting Hodges' contract theory is a principle alluded to in *Eatmon v. Penland*, 119 Okl. 180, 249 P. 387 (1926), namely, that "a past consideration, if it imposed no legal obligation at the time it was furnished, will support no promise whatsoever;" that is, "an executed consideration is no consideration." But *Eatmon* was not a bonus case and a review of decisions indicates that a body of common law somewhat indigenous to employment bonuses has developed, thus eliminating the necessity of our having to spend time structuring the decision in this case on fundamentals of contract law.[2]

A bonus, it has been held, "is not a gift of gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of that which would ordinarily be given." *Adams v. Mid-West Chev. Corp.*, 198 Okl. 461, 179 P.2d 147 (1947). In *Adams* the court quoted with apparent approval from 40 A.L.R. 1424 (1955), concerning the absence of cases holding that the corporate grant of a bonus is an ultra vires act and that "cases holding that the promise of a bonus is enforceable by an employee [are] set out in the annotation in 28 A.L.R. 331 and 346 [(1924), which] sustain, by implication at least, . . . the view that such a grant is not ultra vires."

In this case justice requires enforcement of Hodges' promise to pay the $7,000 bonus to plaintiff.

Contrary to Hodges' contention, such enforcement is not at war with the holding in *Cain's Coffee Co. v. McNutt*, Okl., 308 P.2d 651 (1957). In *Cain's* no promise of a specific bonus had been made to any employee. All that had happened was that the board of directors approved a resolution in August setting aside a fund to be used to pay each employee a Christmas bonus. The amount of a given employee's bonus was left up to

**2.** We might point out, however, that the law in this state is that "[g]ood consideration" is "[a]ny benefit conferred, *or* agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." 15 O.S.1971 § 106 (emphasis added)

Here a strong argument can be made that promisor Hodges gave the bonus both for the past services of McGraw above and beyond that required by the employment contract—a benefit conferred upon Hodges—and for the sake of encouraging the employee to continue extraordinary performance in the future. And if this be considered excessive striving to find consideration for Hodges' promise, it may be time to invoke the doctrine of detrimental reliance (promissory estoppel) as advocated by Frey and Long in an effort to achieve justice. Frey and Long, Detrimental Reliance On A Promise (Promissory Estoppel) In Oklahoma, 52 O.B.J. 409 (1981). This doctrine appears to have been McGraw s basis for his further, amended allegation that the bonus formed a portion of his compensation under an oral employment agreement and was promised to him to induce him to stay with the company.

his immediate superior, to be decided as Christmas approached. Moreover, although the fund was of necessity appropriated on the basis of the company's financial experience during its fiscal year ending June 31, the bonus was to compensate for the employee's calendar year work period because it was given annually, near the end of the year. In *Cain's* the employee, whose employment was terminated in October, sued to recover one-twelfth of his commissions for the previous fiscal year, which was the amount of the bonus he may have received had he remained on the job until Christmas.[3] His claim was rejected because at the time he left the company a specific bonus had not yet been declared as to him and was not to have been until Christmas.

In the case at bar, unlike *Cain's*, the promised bonus was complete as to the work period covered and the amount being paid. To use a latin term, the obligation was one created *in presenti* and nothing in the September letter expressly or implicitly required the promisee to be an employee when the payment funds became available.

The judgment appealed is affirmed.

BACON, P. J., concurs.

BOYDSTON, J., dissents.

BOYDSTON, Judge, dissenting.

Under ordinary circumstances, no specific, continuing contractual right arises from the pattern or fact of past payment of a bonus. Bonus systems are managerial devices designed to create incentive for employees by which an employer attempts to encourage continued faithful service and higher quality performance. Implicit in the practice of payment of bonus is the condition that employee must maintain his status as such until the bonus is actually paid. It not only rewards an employee for past special job performance, but it also integrally connected to employer's future expectation of such performance. As a matter of common business practice, the two component parts are so intertwined, to assign more status to past performance than to future performance[1] is to destroy its value and perhaps, eventually, the custom.

I believe *Cain's Coffee Co. v. McNutt*, Okl., 308 P.2d 651 (1957), is the controlling case, though I would interpret its holding differently from that of the majority.

*Cain's* board of directors declared a bonus derived from company profits related to the fiscal year which had previously ended. A fund for the payment of that bonus had even been set aside by written resolution of the board. It was to be paid at Christmas and was equal to one-twelfth of the employee's salary. Employee was terminated in October and sued to enforce payment of the bonus. The supreme court denied recovery relying mainly on the factual absence of a contract[2] and the legally implied condition that plaintiff had to have been employed at the time payment was to be made.

In both the case at bar and in *Cain's*:

(1) the employer declared a bonus was to be paid;

(2) the bonus was for work already performed in a past fiscal year;

(3) the amount was declared or could be easily computed ($7,000 as compared to $\frac{1}{12}$ annual salary);

(4) the bonus was to be paid at a later date;

(5) employment terminated prior to its payment.

The wording in employer's (Hodges) September letter "I am giving" and that pay-

---

**3.** This was customarily the amount paid to the employee in prior years. But the board, while it had resolved to put a certain sum of money aside to be used for bonuses, had not yet given its employees a bonus and did not plan to do so until Christmas. Moreover, the bonus received by an employee was for the worker's immediate past calendar year performance.

**1.** From a practical, common sense standpoint the future aspect is the *only* business reason

employer pays a bonus unless one assigns to a bonus the status of a gift which the courts have uniformly declined to do!

**2.** In the present case, there can be no valid assertion of a contractual right prior to the September letter because, as employer points out, no prior agreement to pay the bonus existed between the parties and the work performed had already been performed.

ment was postponed until "next year" clearly assumes an ongoing relationship and clearly contemplates, if not directly, then impliedly, the continued employment of plaintiff as a condition of payment.

The net result of the majority opinion is to declare that an employee's right to a bonus vests and becomes absolute when: (1) employer declares its intention to pay a bonus; and (2) the amount of the bonus is made definite. Both of these factors are almost always present in any bonus scheme either directly, as in *Cain's,* or impliedly by custom of past payments. This decision creates an unnecessary and unwarranted legal intrusion into what has traditionally been a prerogative of the employer. It also goes against the grain of the holding in *Cain's.*

I would hold that employee's right to a bonus does not vest until it is paid, unless a contrary contractual obligation is proven.